# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY TYRONE CAMPBELL, SR., <br> Plaintiff, <br> v. <br> P. DICKEY, <br> Defendant. | Case No. 1:14-cv-00918-DAD-BAM (PC) <br><br> **FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> (Doc. No. 40) <br><br> **FOURTEEN (14) DAY DEADLINE** |

**I.     Introduction**

Plaintiff Anthony Tyrone Campbell, Sr., is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action currently proceeds on Plaintiff's equal protection claim against Defendant P. Dickey. Plaintiff claims that Defendant Dickey racially-profiled him because his ethnicity is Black, and therefore automatically assumed that he would be compatible with a cellmate who was a member of a prison gang, although Plaintiff is not gang-affiliated. Plaintiff further alleges that Defendant disciplined him for failing to accept the gang-affiliated cellmate despite a risk to his safety.

Currently before the Court is Defendant's motion to dismiss, filed on October 9, 2017. (Doc. No. 40.) Plaintiff filed an opposition, on extension, on November 29, 2017. (Doc. No. 42.) Defendant filed a reply on December 5, 2017. (Doc. No. 43). The motion is deemed submitted. Local Rule 230(l).

1

## II. Background

This case has a lengthy procedural history, which the Court will briefly summarize. This action was initiated when Plaintiff filed a complaint on June 16, 2014. (Doc. No. 1.) Plaintiff sought to amend his complaint before it was screened, and leave was granted. (Doc. No. 8.) On July 24, 2014, Plaintiff filed a first amended complaint. (Doc. No. 9.)

On July 20, 2015, Plaintiff's first amended complaint was found not to state any cognizable claim, and leave to amend was granted. (Doc. No. 12.) On August 17, 2015, Plaintiff filed a second amended complaint. (Doc. No. 14.)

On August 3, 2016, the Court dismissed Plaintiff's action for failing to state a claim upon which relief may be granted. (Doc. No. 18.) Judgment was entered that same day. (Doc. No. 19.) Plaintiff appealed. (Doc. No. 20.)

On March 17, 2017, the Ninth Circuit affirmed in part, reversed in part, and remanded this action. (Doc. No. 26.) The Ninth Circuit found that all claims had been properly dismissed except for Plaintiff's equal protection claim against Defendant Dickey. The Ninth Circuit held that such dismissal was premature because "the allegation that Dickey assigned Campbell to a cell with a gang-affiliated inmate based on Campbell's race, liberally construed, is 'sufficient to warrant ordering [defendant] to file an answer.'" (*Id*. at 2) (quoting *Wilhelm v. Rotman*, 680 F.3d 1113, 1116 (9th Cir. 2012)). *See also Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (plaintiff need only allege that defendant acted at least in part based on a plaintiff's protected status). The Ninth Circuit issued its mandate on April 10, 2017.

On May 10, 2017, the Court ordered the United States Marshal to serve the summons and second amended complaint on Defendant Dickey. (Doc. No. 28.) Various issues arose regarding service, and finally on September 9, 2017, a waiver of service was returned executed. (Doc. No. 39.)

Following the return of the waiver of service, the instant motion to dismiss was filed. (Doc. No. 40.)

///

///

**III. Discussion**

  **A.  Parties' Arguments**

Defendant first argues that Plaintiff's claim is barred by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). Specifically, Plaintiff attached an appeal response to his complaint which shows that he pleaded guilty to a charge of refusing to accept assigned housing, and was assessed 90-days forfeiture of credits and 90-days loss of privileges as a result. As Plaintiff has not shown the decision was reversed or expunged, Defendant argues that the claim in this action is precluded. Defendant next argues that Plaintiff has failed to sufficiently plead a cognizable claim under the Equal Protection Clause. Defendant further argues that Plaintiff has insufficiently pleaded facts showing a constitutionally-protected injury. Finally, Defendant argues that he is entitled to qualified immunity.

Plaintiff disagrees that the *Heck* bar applies in this case, although he has not gained a favorable outcome through a state habeas corpus proceeding on his conviction. Plaintiff further argues that he has sufficiently stated an Equal Protection Clause claim on the basis of racial discrimination, and has sufficiently pleaded an injury. Finally, Plaintiff opposes any grant of qualified immunity here, as he has alleged that his Equal Protection rights were violated.

In reply, Defendant argues that Plaintiff claim is barred based on his admission that he has not had a favorable state habeas corpus proceeding, or otherwise shown that his conviction connected to this claim was reversed. Defendant further argues that Plaintiff has not pleaded facts showing intentional discrimination due to race, but rather relies on protection for being a non-affiliated inmate, which does not state a cognizable Equal Protection claim. Finally, Defendant argues that Plaintiff identified no precedent demonstrating that Defendant violated a constitutionally-protected right here, and therefore qualified immunity applies.

  **B.  Legal Standards**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted). To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996–97 (9th Cir. 2006); *Morales v. City of L.A.*, 214 F.3d 1151, 1153 (9th Cir. 2000). Further, prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

### C. Analysis

#### 1. *Heck v. Humphrey*

The Court first addresses Defendant's argument that Plaintiff's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the *Heck* bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81; *Heck*, 512 U.S. at 482, 486–487; *Edwards v. Balisok*, 520 U.S. 641, 644 (1997). Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81–82.

However, "challenges to disciplinary proceedings are barred by *Heck* only if the § 1983 action would be seeking a judgment at odds with [the prisoner's] conviction or with the State's

calculation of time to be served." *Nettles v. Grounds*, 830 F.3d 922, 928–29 (9th Cir. 2016) (en banc) (citing *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004)). "If the invalidity of the disciplinary proceedings, and therefore the restoration of good-time credits, would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought in § 1983." *Nettles*, 830 F.3d at 929; *see also Pratt v. Hedrick*, No. C 13–4557 SI (pr), 2015 WL 3880383, at *3 (N.D. Cal. June 23, 2015) (section 1983 challenge to disciplinary conviction not *Heck*-barred where "the removal of the rule violation report or the restoration of time credits" would not necessarily result in a speedier release for inmate with indeterminate life sentence and no parole date).

        Here, Plaintiff attached to his second amended complaint a Second Level Appeal Response, dated December 24, 2013. (Second Am. Compl., Doc. No. 14, Ex. A.) The Response discusses a Rules Violation Report ("RVR") charging Plaintiff with Willfully Obstructing a Peace Officer in the Performance of Duty: Refusal to Accept Assigned Housing. (*Id*. at 12.) Plaintiff was found guilty of that charge, and he appealed the conviction, seeking for it to be reversed, remanded, and dismissed. Plaintiff had been assessed 90 days forfeiture of credits and 90 days loss of privileges. The Response states that Plaintiff's appeal was denied at the second level. (*Id*. at 13.) Plaintiff also admits that his appeal was subsequently denied at the third and final level of review. (*Id*. at 9.)

        Defendant argues that the Response gives the Court enough information to determine that Plaintiff's claim is barred by *Heck* in this case. The Court finds that it is not clear that Plaintiff's conviction for refusing to accept assigned housing via prison disciplinary proceedings and his resultant loss of 90 days of credits would necessarily affect the length of time he must serve in custody. *See Nettles*, 830 F.3d at 929 n.4. Although the Court has some information on the assessed credits and some information that he unsuccessfully appealed the matter, the Court does not have any information before it regarding the nature of Plaintiff's sentence, *e.g*., whether he is serving a determinate or indeterminate sentence, or whether his initial eligibility for parole has already passed. *See Wilkerson*, 772 F.3d at 840 (*Heck* does not bar a § 1983 claim that will have no impact on a prisoner's conviction or the duration of his or her sentence); *see also Delgado v.*

5

*Gonzalez,* 686 F. App'x 434, 434-35 (9th Cir. 2017) (vacating district court's dismissal of inmate's § 1983 complaint alleging a retaliation claim in connection with an allegedly false RVR, because the record did not make clear whether the prisoner's loss of sixty days good-time credit would necessarily affect the length of time served). Without such information, the Court cannot determine whether a *Heck* bar applies to Plaintiff's claim.

Further, Plaintiff seeks to challenge the assignment of a cellmate based upon an impermissible racial basis. This challenge is not inconsistent with *Heck.* Plaintiff agrees he refused to accept the cellmate.

Based on the foregoing, at this stage, the Court finds that Defendant has failed to demonstrate that success on Plaintiff's claim here will necessarily affect the duration of Plaintiff's confinement, even if it may undermine the RVR conviction. For that reason, the Court finds that the motion to dismiss should not be granted on *Heck* grounds, and turns to Defendant's next argument.

### 2. Failure to State a Cognizable Claim

Defendant next argues that Plaintiff has failed to allege sufficient facts to state a claim under the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003) (quoting *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). "Prisoners are protected under the Equal Protection Clause . . . from invidious discrimination based on race." *Id*. at 1081-82 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556, (1974)). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Id*. at 1082 (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Id*. (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir.1994) (emphasis in original)).

6

In this case, Plaintiff alleges that Defendant "racially profiled" him when ordering him to cell with a gang-affiliated inmate. (Second Am. Compl. 5.) Plaintiff further alleges that this was evident when Defendant asked aloud whether Plaintiff was "a crip or a blood," and that when Plaintiff denied any such gang-affiliation, Defendant replied that "it's gonna have to be one or the other…." (*Id*. at 6.) Plaintiff again stated that he was non-affiliated, and stated that he would refuse any unreasonable order to "enforce gang ties and association upon [him]." (*Id*.) Plaintiff refused to cell with the gang-affiliated inmate, and alleges that when Defendant prepared Plaintiff's RVR for refusing to accept the assigned housing, Defendant wrote that Plaintiff's "ethnicity is black . . . and there is no reason to believe the two are incompatible," referring to Plaintiff and the gang-affiliated, black inmate. (*Id*. at 6-7.) Plaintiff previously submitted the RVR in support of these allegations. (First Am. Compl., Doc. No. 9, Ex. A.) Finally, Plaintiff alleged that Defendant's conduct showed that Defendant's "discriminatory intent is at a least part of reason why prison guard racially profiled Plaintiff as being compatible with a gang member." (Second Am. Compl. 7 (errors in original).) Liberally construed, the Ninth Circuit has found these allegations were sufficient to state an Equal Protection claim because Plaintiff was ordered to accept a gang-affiliated cellmate at least in part due to racial discrimination.

Defendant argues that Plaintiff has not pleaded any facts to show that he was treated differently than a similarly-situated inmate, or that Defendant acted pursuant to any race-based policy or practice. However, these are not the only methods by which a plaintiff may state an Equal Protection claim. Violations of equal protection are shown when a respondent intentionally discriminates against a petitioner based on membership in a protected class, *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or when a respondent intentionally treats a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601–02 (2008). Here, Plaintiff was found to state a claim based upon direct evidence of intentional discrimination against him based on his protected class, as shown by Defendants' alleged statements regarding Plaintiff's race or ethnicity with respect to his housing

7

assignment. Plaintiff is not required to allege additional allegations of disparate treatment or a policy or practice where he has sufficiently alleged intentional discrimination.

Defendant also argues that the RVR statement that Plaintiff and other inmate were black, and that there was no reason to believe they were incompatible, does not necessarily suggest racial discrimination. Defendant argues that the statement could be interpreted to mean that various factors were evaluated to find that Plaintiff and the other inmate were compatible for the cell assignment. However, at this stage, the Court must assess the allegations in the light most favorable to Plaintiff, not construe them in Defendant's favor. As noted above, the allegations regarding the RVR language, when considered with Plaintiff's other allegations regarding Defendant's conduct and when construed in Plaintiff's favor, were found by the Ninth Circuit to be sufficient to show that Defendant acted at least in part based on racial discrimination.

Defendant also argues that Plaintiff has not sufficiently alleged any constitutional injury here, because he only alleges that Defendant disciplined him for refusing to accept the housing assignment. Defendant further argues that Plaintiff has failed to allege that Defendant had any responsibility for his housing assignment. "[R]acial segregation, which is unconstitutional outside prisons, is unconstitutional within prisons, save for 'the necessities of prison security and discipline.'" *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (per curiam) (quoting *Lee v. Washington*, 390 U.S. 333, 334 (1968)). It is well-established that "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment for invidious discrimination based on race." *Johnson v. California*, 207 F.3d 650, 655 (9th Cir. 2000) (quoting *Wolff*, 418 U.S. at 556). Defendant's argument construes Plaintiff's allegations as merely complaining that he was disciplined for refusing his housing assignment. But as discussed above, Plaintiff has alleged that Defendant ordered him to accept housing with a gang-affiliated inmate in part due to racial discrimination. Further, rather than the housing assignment being done as a security concern, Plaintiff alleges that Defendant was indifferent to the issue of gang-affiliation. The injury in this case is Plaintiff's allegation that he was subject to intentional discrimination; that is, the denial of fair and equal treatment regarding Plaintiff's housing assignment because of racial discrimination is his injury. *See Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1185 (9th Cir. 2012)

(those who are personally denied equal treatment based on race have a cognizable injury under Article III).

Based on the foregoing, the Court finds that Plaintiff has sufficiently pleaded a cognizable Equal Protection claim. Therefore, the Court turns to Defendant's arguments regarding qualified immunity.

### 3. Qualified Immunity

Finally, Defendant argues that Plaintiff fails to sufficiently allege that Defendant violated his constitutional rights, and therefore qualified immunity protects Defendant here.

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (the two factors set out in *Saucier* need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

"For the second step in the qualified immunity analysis−whether the constitutional right was clearly established at the time of the conduct−the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (quoting *al−Kidd*, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) (citation and internal marks omitted).

In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). An official's subjective beliefs are irrelevant. *Inouye*, 504 F.3d at 712.

Defendant argues that no reasonable officer would have known that he could not discipline a prisoner for refusing to comply with a direct order to accept a housing assignment. Further, he argues that Plaintiff cites no precedent that that a correctional officer violates an inmate's constitutional rights when imposing justified discipline, and therefore, Defendant is entitled to qualified immunity.

Viewed in the light most favorable to Plaintiff, he has alleged that Defendant ordered him to accept a gang-affiliated cellmate in part due to racial discrimination. As explained above, the Ninth Circuit found that Plaintiff's allegations were sufficient to show that Defendant violated Plaintiff's constitutional rights. Further, as to the second step in the qualified immunity analysis, it has been long-established that racial discrimination in prison housing violates the Equal Protection Clause of the Fourteenth Amendment. *See Wolff*, 418 U.S. at 556 (citing *Lee*, 390 U.S. at 333); *Cruz*, 405 U.S. at 321; *Johnson*, 207 F.3d at 655. Therefore, at this stage, the Court cannot find that Defendant is entitled to qualified immunity here.

### IV. Conclusion and Recommendation

For the reasons explained above, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss (Doc. No. 40) be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, under 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 9, 2018**       /s/ Barbara A. McAuliffe
                                UNITED STATES MAGISTRATE JUDGE