# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY TYRONE CAMPBELL, SR., | Case No. 1:14-cv-00918-JLT-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| DICKEY, | (ECF No. 61) |
| Defendant. | **FOURTEEN (14) DAY DEADLINE** |

## I.     Introduction

Plaintiff Anthony Tyrone Campbell, Sr. ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's second amended complaint against Defendant P. Dickey ("Defendant") for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment based on allegations that Defendant assigned Plaintiff to a cell with a gang-affiliated inmate based on Plaintiff's race.  (ECF No. 25.)

Currently before the Court is Defendant's motion for summary judgment on the grounds that Defendant is entitled to judgment as a matter of law and is entitled to qualified immunity, filed October 24, 2019.[1]  (ECF No. 92.)  Plaintiff filed an opposition to the motion for summary judgment on December 23, 2019.  (ECF No. 63.)  Defendant filed a reply on December 30, 2019.  (ECF No. 64.)  Defendant's motion for summary judgment is fully briefed.  Local Rule 230(l).

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  (ECF No. 61-5.); *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).

1

For the reasons set forth below, the Court recommends that Defendant's motion for summary judgment be granted.[2]

## II. Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

---

[2] This motion was dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

2

U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III. Discussion

#### A. Undisputed Material Facts ("UMF")[3]

<u>Allegations in Second Amended Complaint</u>

1. Plaintiff contends that Correctional Officer P. Dickey ("Defendant") "racially profiled Plaintiff as being compatible with a gang member." (ECF No. 14 (Second Am. Compl.

---

[3] *See* Defendant's Separate Statement of Undisputed Material Facts, (ECF No. 61-1), and Plaintiff's Opposition, (ECF No. 63, pp. 29–34), to the extent Plaintiff complied with the rules by providing "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts. Local Rule 260(b). In addition, Defendant's and Plaintiff's statements of undisputed material facts are accepted except where brought into dispute by Plaintiff's verified Second Amended Complaint. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

("SAC"), p. 7.)

2. Plaintiff further alleges that "discriminatory intent is at least a part" of the reason why Defendant acted to assign an inmate to Plaintiff's cell. (*Id.*)

3. To the extent that the allegations in the SAC suggest that Defendant assigned Plaintiff to a cell with a gang-affiliated inmate because of Plaintiff's race, this allegation suggests a violation of Plaintiff's right to equal protect. (*See* ECF No. 25, "Memorandum," at 2.)

4. Beyond the Equal Protection claim as to Defendant, there are no other claims or defendants presently at issue in the action. (*Id.* at 2–3; ECF No. 61-2, Ex. A ("Campbell Depo."), pp. 14:24–15:24.)

<u>Title 15 Requires that a Correctional Supervisor Conduct an Inmate Housing Compatibility Assessment</u>

5. California Code of Regulations, title 15, section 3269 describes the factors that correctional supervisors consider when determining inmate compatibility, prior to making inmate housing assignments. (ECF No. 61-4 ("Blackburn Decl."), ¶ 6, Ex. 1; Campbell Depo., pp. 26:23–27:3, 60:2–61:25.)

6. Inmates are expected to be double-celled unless the inmate has been specifically designated as having custody or safety concerns. Inmates are also expected to safely house with inmates of any race, unless designated as having a history of racially-motivated violence. (Blackburn Decl., ¶ 5; Cal. Code Regs., tit. 15 §§ 3269, 3269.1 (2013).)

7. An inmate's housing compatibility must be assessed by a "designated custody supervisor," who is responsible for screening the inmate for an appropriate housing assignment. (Cal. Code Regs., tit. 15 § 3269(a) (2013); Blackburn Decl., ¶ 6; ECF No. 61-3 ("Dickey Decl."), ¶ 6.)

8. Inmates are required to accept housing assignments as issued by correctional staff, and may be subject to discipline if the inmate refuses the assigned housing. (Cal. Code Regs., tit. 15 § 3269(g) (2013); Campbell Depo., pp. 52:8–12, 62:5–12; Dickey Decl., ¶ 15.)

///

///

4

<u>Officer Dickey was Not Responsible for Evaluating Inmate Compatibility</u>

9. Plaintiff arrived at California Correctional Institution ("CCI") in Tehachapi, California in 2013, and was housed in the administrative segregation facility. (Campbell Depo., pp. 13:12–22, 20:5–21.)

10. In 2013, Defendant was employed as a correctional officer at CCI in Tehachapi, California. (Dickey Decl., ¶ 3.)

11. On October 3, 2013, Defendant facilitated a cell move by escorting inmate Smith to the cell occupied by Plaintiff, and instructing Plaintiff to accept inmate Smith as a cellmate. (Campbell Depo., p. 19:8–15; Dickey Decl., ¶ 7.)

12. At CCI, Defendant was assigned as a Search and Escort officer. His duties generally included escorting inmates to showers, supervising yard exercise, and facilitating meal service. Defendant's responsibilities included the secure escort of inmates around the Administrative Segregation facility. (Campbell Depo., pp. 37:19–38:6; Dickey Decl., ¶¶ 4–6; Blackburn Decl., ¶ 9–10.)

13. As a correctional officer, Defendant does not have authority to evaluate inmate compatibility for cell assignments. Defendant may escort an inmate to a new cell, if instructed to do so by a correctional supervisor. A custody supervisor is responsible for conducting inmate compatibility evaluations. (Campbell Depo., p. 103:15–24, 105:10–17; Blackburn Decl., ¶¶ 9–10; Dickey Decl., ¶¶ 6, 9.)

14. No facts establish that Defendant was responsible for conducting the inmate compatibility assessment to determine whether Plaintiff was compatible with inmate Smith. No facts establish that Defendant was conducting an inmate compatibility assessment, nor that he was acting as the "designated custody supervisor," when he approached Plaintiff and asked whether Plaintiff was a "Crip" or a "Blood." (Campbell Depo., pp. 62:17–63:25; Dickey Decl., ¶¶ 8–9, 10.)

15. Defendant did not review any documents prior to instructing Plaintiff that inmate Smith would be assigned to his cell. (Campbell Depo., pp. 47:15–48:5, 64:6–10, 78:15–21, 80:4–15; Dickey Decl., ¶¶ 8–9.)

16. No evidence shows that Defendant was responsible for evaluating housing assignments for any inmate beside Plaintiff, and no evidence suggests that Defendant effected Plaintiff's housing assignment differently than he did inmates of other races. (Campbell Depo., pp. 45:18–46:1, 87:13–15, 88:8–89:5; Dickey Decl., ¶¶ 5–6; Blackburn Decl., ¶ 10.)

17. Defendant issued Plaintiff a Rules Violation Report *after* Plaintiff refused the housing assignment. This document was signed by Defendant and Sergeant Abernathy, along with other correctional supervisors. The Rules Violation Report reflects that Plaintiff and inmate Smith were both cleared to cell together by Sergeant Abernathy, and that neither inmate was an enemy of the other and there is no reason to believe that the two are incompatible. (Campbell Depo., pp. 41:2–24, 42:14–43:2, 83:23–84:10, 106:25–107:10; Dickey Decl., ¶¶ 13–14, Ex. 1.)

<u>No Evidence Establishes that Officer Dickey Was Motivated By Racial Bias or Animus Toward Plaintiff</u>

18. Plaintiff had negligible contact with Defendant prior to the incident at issue. These contacts consisted only of passing greetings or similar exchanges. (Campbell Depo., pp. 35:25–36:19, 37:5–18; Dickey Decl., ¶ 8.)

19. After Defendant issued Plaintiff a Rules Violation Report for failing to accept an assigned cellmate, Plaintiff did not have subsequent contact with Defendant. (Campbell Depo., pp. 87:16–88:1, 102:7–14; Dickey Decl., ¶ 16.)

20. No evidence establishes that Defendant was motivated by racial animus, but rather, Plaintiff speculates that Defendant intended to harm him because Plaintiff had been accused of assault on a correctional officer at his prior institution. (Campbell Depo., pp. 45:3–17, 47:3–14, 48:14–22, 74:11–19, 80:1–3, 84:22–85:5, 107:20–108:4; Dickey Decl., ¶¶ 10–12.)

21. No evidence establishes that Defendant Dickey failed to consider the compatibility factors set out in Title 15, and failed to follow appropriate procedures. (Campbell Depo., pp. 86:23–87:12; Dickey Decl., ¶¶ 9, 11, 14.)

<u>No Evidence Establishes that Plaintiff was Incompatible with Inmate Smith</u>

22. Gang affiliation is considered when evaluating inmate compatibility, but is not a dispositive factor regarding inmate compatibility. Non-affiliated inmates may be safely housed

with gang-affiliated inmates, provided that the individuals are not otherwise incompatible. (Cal. Code Regs., tit. 15 § 3269(a) (2013); Blackburn Decl., ¶ 7; Dickey Decl., ¶¶ 10, 14.)

23. Plaintiff is classified "RE" or "racially eligible," meaning that he can be housed with inmates of any race. (Campbell Depo., pp. 35:7–10, 54:25–55:9.)

24. Plaintiff contends that he is incompatible with inmates who are members of the "Crip" and "Blood" gangs. However, Plaintiff would not have objected to living with a cellmate of any race, provided that the assigned cellmate was not a member of a prison gang. (Campbell Depo., pp. 33:17–34:4, 34:19–35:6, 46:13–22, 95:12–24, 96:17–97:4, 116:22–117:1.)

25. Plaintiff acknowledges that he has previously lived with inmates who were members of gangs, including African-American members of the "Crip" and "Blood" gangs. (Campbell Depo., pp. 57:17–58:5, 89:14–90:9.)

26. Plaintiff believes that inmate Smith was a member of a prison gang, or "Security Threat Group," based on a single, brief conversation with inmate Smith. Plaintiff was informed by inmate Smith that he was affiliated with a gang from Southern California, but Plaintiff does not know what particular gang. (Campbell Depo., pp. 30:5–14, 31:4–32:17, 35:11–20, 73:9–25, 78:8–14, 101:17–21.)

<u>Defendant Did Not Know that Plaintiff was Incompatible with Inmate Smith, and Did Not Intend to Place an Incompatible Inmate in Plaintiff's Cell</u>

27. Plaintiff did not tell Defendant that he was threatened by inmate Smith's "aggressive demeanor" when introducing himself, and the tone in which inmate Smith informed Plaintiff that correctional staff were moving Smith into Plaintiff's cell. (Campbell Depo., pp. 65:7–12, 73:9–25, 75:2–19, 76:16–77:21.)

28. Prior to issuing a Rules Violation Report to Plaintiff, Defendant reviewed the central files of Plaintiff and inmate Smith. Both inmates were classified as "RE" and were able to live with inmates of any race. Neither inmate was designated as being a member of a Security Threat Group. Defendant did not see any issues in the respective inmate records that indicated that the inmates were incompatible. Plaintiff did not explain to Defendant that he was incompatible with inmate Smith because of inmate Smith's gang affiliation. (Campbell Depo.,

pp. 81:9–82:6; Dickey Decl., ¶¶ 13–14.)

### B. Parties' Positions

Defendant contends that no facts establish that he was responsible for evaluating inmate compatibility, personally acted to assign any inmate to Plaintiff's cell, or took any action because of Plaintiff's race. Further, any errors in assessing Plaintiff's compatibility do not establish a violation of a constitutional right, and Defendant is entitled to qualified immunity.

Plaintiff asserts that existing material facts establish that Defendant did take action on the basis of racial animus and discriminatory motivation relevant to Plaintiff's housing assignment, that Defendant was designated by Sergeant Abernathy to facilitate the housing assignment, and that housing inmates who are members of a prison gang with inmates who are not affiliated with a security threat group conflicts with CCR Title 15 § 3269. Plaintiff further contends that qualified immunity is not appropriate.

In reply, Defendant argues that Plaintiff's opposition fails to identify any specific facts demonstrating a genuine issue for trial, proffering only speculation and irrelevant assertions. Plaintiff also fails to adequately establish elements on which he will bear the burden of proof at trial.

### C. Analysis

#### 1. Defendant Was Not Responsible for Evaluating Inmate Compatibility

Based on the undisputed facts, Plaintiff has failed to show an actual connection between Defendant's actions and the alleged violation of Plaintiff's rights, as required by section 1983. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.").

Inmate housing compatibility assessments are conducted by a "designated custody supervisor." UMF 7. At the time of the events at issue, Defendant was assigned as a Search and Escort officer, and his duties did not include conducting inmate compatibility evaluations. UMF 12, 13. Defendant's only role with respect to housing was to escort inmates to a new cell, if

8

instructed to do so by a correctional supervisor. UMF 13. Plaintiff's first response to these facts is his assertion that a designated custody supervisor may instruct its subordinate to conduct an inmate housing assignment, and Defendant was so instructed by non-party Sergeant Abernathy on October 3, 2013. (ECF No. 63, pp. 30–31.) Plaintiff cites to no evidence in support of these conclusory allegations, and they are not sufficient to create a dispute of fact. *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."). To the extent any violation occurred in determining that inmate Smith was a compatible cellmate to Plaintiff, there is no evidence in the record to support Plaintiff's allegation that Defendant—rather than a designated custody supervisor, such as Sergeant Abernathy—was the individual who had the responsibility or authority for making that evaluation.

Plaintiff next argues that Defendant's review of the central files of Plaintiff and inmate Smith demonstrates that Defendant was indeed designated to conduct the housing evaluation and did so. (ECF No. 63, pp. 31–33.) However, Defendant reviewed the central files only *after* Defendant escorted inmate Smith to Plaintiff's cell, and before Defendant issued the Rules Violation Report to Plaintiff for refusing to cell with inmate Smith. UMF 28. Defendant reviewed the classifications of both inmates only to confirm whether Plaintiff had any valid objections to housing with inmate Smith, not for the purpose of conducting the initial housing assignment. *See id.*; (Dickey Decl., ¶ 13). Therefore, this argument also fails.

        2.    <u>No Evidence of Racial Animus or Discriminatory Motivation</u>

Even assuming the evidence showed that Defendant had a role in evaluating Plaintiff's housing assignment and compatibility with inmate Smith, there is no evidence establishing that Defendant was motivated by racial bias or animus towards Plaintiff, or that he treated Plaintiff any differently than any other inmate when facilitating a housing assignment.

Plaintiff claims that racial animus was demonstrated when Defendant stated, "Campbell what are you a crip or a blood," and "Campbell's ethnicity is Black and there is no reason to believe the two are incompatible." (ECF No. 63, p. 33.) Aside from Plaintiff's unsupported allegations in his opposition to the motion for summary judgment and the second amended

complaint, there is no evidence in the record that Defendant made these statements. UMF 14; (Dickey Decl., ¶ 8). There is also no evidence that Defendant effected Plaintiff's housing assignment differently than he did inmates of other races. UMF 16. Rather, Plaintiff merely speculates that Defendant intended to harm Plaintiff due to accusations that Plaintiff assaulted a correctional officer at a prior institution. UMF 20. Again, Plaintiff's conclusory allegations regarding racial animus are insufficient to dispute the evidence in the record, which includes Plaintiff's own deposition testimony provided under penalty of perjury. *See Rivera v. AMTRAK*, 331 F.3d at 1078.

### 3. No Claim for Violation of Prison Regulations

Plaintiff finally argues that it was a violation of prison regulations to find that a non-gang-affiliated inmate like himself was a compatible cellmate to a gang-affiliated inmate like Smith. While gang affiliation is a factor that must be considered when evaluating inmate compatibility, there is no evidence that the regulations prohibit housing gang-affiliated inmates with non-affiliated inmates, provided that the individuals are otherwise compatible. UMF 22.

Even if an error had been made in assessing Plaintiff's compatibility pursuant to the applicable regulations, this would not support a claim under § 1983 against Defendant. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See, e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred.").

### D. Qualified Immunity

Defendant also asserts that the Court should grant summary judgment on the basis of qualified immunity. However, the Court finds that this argument need not be reached, based upon the above determination regarding the undisputed facts in this case.

///

**IV.     Conclusion and Recommendation**

For the reasons explained above, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim against Defendant P. Dickey for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment based on allegations that Defendant assigned Plaintiff to a cell with a gang-affiliated inmate based on Plaintiff's race.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment, (ECF No. 61), be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 31, 2024**                    /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE